UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAROL AMEDIO,

      Plaintiff,

v.

      CASE No. 8:10-CV-1350-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

O R D E R

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not identified any reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-nine years old on the date that she was last insured for disability benefits, and who has a high school education and some college, has worked as a secretary and a human resources manager

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

(Tr. 126, 148, 151). She filed a claim for Social Security disability benefits, alleging that she became disabled in 1999 due to degenerative disc disease of the cervical spine, depression, fibromyalgia, and chronic pain in the right shoulder, neck, hip, arm, hand, and elbow (Tr. 143). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff last met the earnings requirement for disability benefits on December 31, 2004. He found further that, as of that date, the plaintiff had severe impairments consisting of degenerative disc disease of the cervical spine, fibromyalgia, and chronic neck, hip, arm, shoulder, elbow, and hand pain (Tr. 77).[2] The law judge concluded that these impairments restricted the plaintiff to performing light work (Tr. 79). Based upon the Dictionary of Occupational Titles, the law judge determined that the plaintiff could return to her past work as a secretary at a newspaper, or a human resources manager for a pharmaceutical company or casino (Tr. 83). The plaintiff was therefore found not disabled

---

[2] The law judge also listed depression as a severe impairment (Tr. 77). However, both parties agree that it was a typographical error (Doc. 21, p. 7; Doc. 22, p. 2 n.1), since the law judge expressly found that depression was a nonsevere impairment and explained that finding in detail (Tr. 78).

(id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A.  In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. 423(d)(3). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A). The plaintiff must also show that she became disabled before her insured status expired on December 31, 2004, in order to receive disability benefits.  42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979). cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

-4-

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11ᵗʰ Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a). If the claimant's impairments are not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c).

When an impairment is severe, but does not meet, or equal, a listed impairment (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f). If a claimant cannot do such work, an additional

determination (step five) is made concerning whether the claimant can perform other work which exists in substantial numbers in the national economy.  20 C.F.R. 404.1520(g).

III.

In 2007, the plaintiff filed an application for disability insurance benefits, alleging that she became disabled in November 1999 after she fell in a friend's home (Tr. 27, 29, 126).  The law judge found that the plaintiff was last insured for disability benefits on December 31, 2004 (Tr. 77).  He found further that, as of that date, the plaintiff had severe impairments of degenerative disc disease of the cervical spine, fibromyalgia, and chronic pain in her neck, hip, arm, shoulder, elbow, and hand (id.).  He concluded that, despite these impairments, the plaintiff could perform the full range of light work (Tr. 79).  The law judge determined further that, to the extent that the plaintiff testified that her physical condition limited her to a greater degree, the testimony was not credible (Tr. 80).  The plaintiff has not challenged any of those findings.  Particularly in light of the scheduling Order (Doc. 11, p. 2), any challenges to the law judge's assessment of the plaintiff's physical condition are deemed waived.

The plaintiff's arguments focus on the law judge's finding that the plaintiff's depression is a nonsevere impairment. Those arguments are meritless. The short answer to the arguments is that the plaintiff did not testify at the hearing that she suffers from depression, the plaintiff's attorney did not mention depression in his pre-hearing memorandum (Tr. 119-21), as well as in his appeal to the Appeals Council (Tr. 230-36), and no medical doctor or psychologist opined that the plaintiff has mental functional limitations from depression. A detailed answer confirms that the law judge did not err in finding that the plaintiff's depression was nonsevere.

The law judge acknowledged in the decision the plaintiff's diagnosis of depression, and explained that he did not find it to be a severe mental impairment because it "did not cause more than minimal limitation in the [plaintiff's] ability to perform basic mental work activities" (Tr. 78). See 20 C.F.R. 404.1521(a). In making this determination, the law judge examined the plaintiff's functioning in the four areas identified in the disability regulations for evaluating mental disorders (id.). See 20 C.F.R. 404.1520a(c). The law judge stated (Tr. 78):

> The first functional area is activities of daily living.
> In this area, the claimant had mild limitations. The

claimant testified that she does light cooking and housecleaning. She even walks, stretches, and performs pool exercises daily and would like to have more physical therapy (See also Exhibits 5F, 6F, and 2F).

The next functional area is social functioning. In this area, the claimant had mild limitations. The claimant testified that she does pool exercises and yoga to loosen up her joints, and although she doesn't baby-sit she walks to her son's and daughter-[in law's] house (See also Exhibits 5F, 6F, and 2F).

The third functional area is concentration, persistence or pace. In this area, the claimant had mild limitations. She testified that pain affects her concentration and short term memory is bad (See also Exhibits 5F, 6F, and 2F).

The fourth functional area is episodes of decompensation. In this area, the claimant had experienced no episodes of decompensation which have been of extended duration. The claimant has not had any formal mental health treatment. As a matter of fact, her depression, mild was diagnosed by [Dr. Jeffrey Kaine,] her PCP (Primary Care Physician) and is being maintained with Zoloft (See also Exhibits 5F, 6F, and 2F).

Because the claimant's medically determinable mental impairments caused no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they were non-severe (20 CFR 404.1520a(d)(1)).

These findings demonstrate that the plaintiff does not have a severe mental impairment. See 20 C.F.R. 404.1520a(d)(1). Thus, in Cuthbert v. Astrue. 303 Fed. Appx. 697, 699 (11th Cir. 2008)(unpub. dec.), the Eleventh Circuit acknowledged that, under the regulation, "[i]f the degree of limitation in the first three functional areas is rated as 'none' or 'mild,' and 'none' in the fourth area, the Commissioner generally concludes the impairment is not severe."

Moreover, the law judge's findings on these areas are amply supported by the record. Thus, the plaintiff's testimony at the hearing, and her disability Function Report, detail an active physical and social life, with daily activities that include exercise, reading, visiting with friends and family. and household chores (Tr. 43-47, 164-68). Additionally, she regularly visits her son's home and goes to church (Tr. 43, 47, 168). This evidence is consistent with, at most, mild impairments in activities of daily living and social functioning. In fact, the law judge could have reasonably found that the plaintiff has no mental limitations in those areas, and that any limitations arise from the plaintiff's physical impairments.

With regard to the plaintiff's concentration, persistence, or pace, the law judge found a mild impairment based on the plaintiff's hearing testimony that she has concentration and memory problems. In this area, the law judge seems to have given the plaintiff the benefit of the doubt, as he did with respect to activities of daily living and social functioning, since the law judge noted that the plaintiff attributed her concentration and memory problems to pain (see Tr. 43-44), not depression. In any event, there is no medical evidence supporting anything greater than the mild limitation found by the law judge. Thus, as indicated, no treating or examining physician has opined that, during the insured period, the plaintiff had a mental impairment that limits her functioning. To the contrary, a 2002 independent medical examination by neurologist Dr. Ronald Aung-Din showed that the plaintiff was "[a]lert, oriented times three, with normal language, memory and thought processes" (Tr. 276).

Similarly, there is no evidence of episodes of decompensation. This is confirmed by the fact that the plaintiff has not received, or even sought, treatment from a mental health specialist (Tr. 78; see Tr. 145-47).

The law judge's findings regarding the four areas for evaluating mental impairments are therefore supported by substantial evidence.

The plaintiff suggests that, in making these determinations, the law judge "went beyond the parameters of his role, and took on the role of a medical expert" (Doc. 21, p. 8). That suggestion is clearly mistaken. The law judge was acting as a fact finder and was carrying out the duties that he was expressly required to perform by the regulations. 20 C.F.R. 404.1520a(e)(2). This is not a situation where a doctor diagnosed the plaintiff with depression and the law judge rejected that diagnosis. Rather, the law judge accepted that diagnosis, but, applying the pertinent criteria, concluded that the depression was nonsevere. This conclusion, furthermore, is supported by the lack of evidence in the medical records showing a severe impairment.

Thus, the medical records contain only sparse complaints of depression. The plaintiff was originally prescribed Zoloft by a nurse practitioner in 2000 in response to a telephone call from the plaintiff that she was experiencing "some depression" (Tr. 360). However, the nurse practitioner did not diagnose depression (see Tr. 359-62). Further, Dr. Jeffrey L. Kaine, the plaintiff's treating rheumatologist, noted during his initial

-11-

consultation with the plaintiff in 2001 that she had "no complaints specifically of depression" (Tr. 351; see also Tr. 252). Further, Dr. Kaine's progress notes from the pertinent time period contain no complaints, or assessments, of depression (see, e.g., Tr. 251, 253, 255, 257, 259, 349). Significantly, on March 17, 2005, which was more than two months after the plaintiff's insured status expired, Dr. Kaine stated that there were "[n]o active symptoms of depression" (Tr. 250). And, on October 27, 2005, Dr. Kaine reported that "Zoloft is working well for minimal symptoms of depression" and that "[a]ll is stable" (Tr. 249).

In March 2002, Dr. Ronald Aung-Din conducted an independent examination of the plaintiff (Tr. 274-78). Although he primarily focused on the plaintiff's physical problems, he also considered her psychological condition. As previously noted, he reported that the plaintiff's mental status, including her memory, was essentially normal, but that she had a "[s]light flattened affect" (Tr. 276). He also gave the plaintiff a Hamilton Depression Scale and Zung Anxiety Scale, and noted that "[t]here is a moderate indication of mixed mood disorder" (Tr. 277). It is appropriate to point out that what he reported was "a moderate indication of a mixed mood disorder,"

and not an indication of a "moderate mixed mood disorder." Further it is not clear what he had in mind with respect to a "mixed mood disorder." although he may have been thinking something like a bipolar disorder with mixed mood episodes. However, there is not the slightest hint in the record that the plaintiff experienced manic phases.

Further, Dr. Aung-Din was not a treating physician and his area of practice was neurology. In addition, he did not opine that the plaintiff had any mental functional limitations. Consequently, Dr. Aung-Din's report does not support a finding that the plaintiff had a severe mental impairment, and it certainly does not compel such a finding. See Adefemi v. Ashcroft. supra. Significantly, the plaintiff, while mentioning Dr. Aung-Din's findings in passing (without even mentioning his name (Doc. 21, pp. 6-7)). made no attempt to show that the findings compel a conclusion that the plaintiff's depression was a severe impairment.

Similarly, the plaintiff does not specifically challenge any of the law judge's findings, or cite any evidence showing that her depression was a severe impairment. Rather, the plaintiff merely notes (without citations to medical evidence) that she was diagnosed with depression which has been

-13-

treated with prescription medication (id.).  However, "a diagnosis or a mere

showing of 'a deviation from purely medical standards of bodily perfection

or normality' is insufficient [to establish a severe impairment]; instead, the

claimant must show the effect of the impairment on her ability to work."

Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005)(unpub. dec.)

(quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)).

       Lacking evidence to support a finding that her depression was

a severe impairment, the plaintiff argues in a conclusory manner that the law

judge did not develop the record adequately because he failed to order a

consultative psychological examination for the plaintiff (Doc. 21, pp. 6, 10).

This contention lacks merit.

       The administrative law judge has a basic obligation to develop

a full and fair record, regardless of whether the applicant is represented by

counsel. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.1981). However,

the law judge "is not required to order a consultative examination ... [where]

the record contains sufficient evidence for the administrative law judge to

make an informed decision." Ingram v. Commissioner of Social Sec. Admin.,

496 F.3d 1253, 1269 (11th Cir. 2007); 20 C.F.R. 404.1519a(b). Moreover, the

plaintiff bears the burden of proving that she is disabled and, therefore. must produce evidence that supports her claim. Ellison v. Barnhart, 355 F.3d 1272. 1276 (11th Cir. 2003).

The law judge did not err in failing to obtain a consultative psychological evaluation.  In the first place. neither the plaintiff, nor her attorney. asked for one.  Further, as indicated, the attorney's pre-hearing memorandum did not even mention depression, and the plaintiff did not testify at the hearing that she suffers from depression.  In addition. the sporadic mentions in the record of depression without an assessment of a functional limitation would not have prompted the law judge to think that the plaintiff was restricted in her working capacity due to depression.

Importantly, the record contains comments from Dr. Kaine, the plaintiff's treating rheumatologist (and the doctor who was prescribing Zoloft). that minimizes any claim of depression prior to the expiration of the plaintiff's insured status on December 31, 2004.  Thus, on March 17, 2005, Dr. Kaine reported no active symptoms of depression (Tr. 250).  On October 27. 2005. he noted that Zoloft was working well for minimal symptoms of depression (Tr. 249).   Consequently, it was reasonable under these

circumstances for the law judge not to request a psychological evaluation. Sneed v. Barnhart, 214 Fed. Appx. 883, 886 (11th Cir. 2006)(unpub. dec.) ("brief references to depression, which was apparently being treated with medication, [are] insufficient to trigger the ALJ's duty to obtain a psychological consultative report").

Moreover, the suggestion that a consultative psychological examination at this point would shed meaningful light on the plaintiff's mental status at her date last insured is completely unpersuasive. The plaintiff did not file this application until almost three years after her insured status expired; the administrative hearing took place more than four and one-half years after that date; and it is now almost six and one-half years after her insured status ended. The thought that a consulting psychologist, after an examination, could plausibly opine as to any functional mental limitations suffered by the plaintiff due to depression as of December 31, 2004, is nonsensical.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is

hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this

Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 15th day of June,

2011.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE